**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMOS TATE, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 18-318 Erie |
| v. | ) | |
| | ) | |
| HUD WASHINGTON DC (Entity), | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Amos Tate commenced this proceeding on October 17, 2018 with the filing of a motion to proceed *in forma pauperis* (ECF No. 1).  Attached to his motion was a complaint directed against:  (1) "HUD Washington DC (Entity)"; (2) "Housing Urban Development Jen Dreswicki (Associate)"; and (3) the unnamed Director" of "Stairways" (officially known as "Stairways Behavioral Health"), a provider of mental health services located in Erie, Pennsylvania (ECF No. 1-1).  The Complaint alleges as follows.

In June 2016, Plaintiff was found to be disabled for social security insurance purposes after a cerebral hemorrhage left him with permanent brain damage.  ECF No. 1-1 at 5.  Since that time, Plaintiff has suffered several mini strokes and has been diagnosed with congestive heart failure.  *Id.* at 7.  After being awarded SSID benefits in June 2016, Plaintiff sought housing assistance from HUD and was placed on the "Erie, PA Disable[d] housing list."  ECF No. 1-1 at 6.  The following month, Plaintiff went to the local HUD office in Erie and inquired whether there was "any vacant disability housing."  *Id.*  Plaintiff was advised by someone that there was a new complex in Meadville, Pennsylvania.  *Id.*  Plaintiff applied for housing at that location

1

because he was informed that he was "first on the list." *Id.* When Plaintiff returned in August 2016 to inquire about available housing, however, he was informed that all the apartments were taken. *Id.* He then inquired about available housing for disabled individuals at various other complexes within the City of Erie. ECF No. 1-1 at p. 6.

Plaintiff alleges that, after "doing two years of disable [sic] SSID investigation," he discovered that "Stairways Mental Health & Behavior case manager is monoplizing [sic] all the HUD housing voucher program federal alloted [sic] monies for disable[d] individuals . . . ." ECF No. 1-1 at p. 6. He claims that "[t]hese ploys" are discriminatory in nature. *Id.* at p. 7. Plaintiff further states that "working people who acquire disablement while working, and people who never worked, have paramount suitability to our subsidize[d] housing," and that "Stairways Mental Health Behavior case managers have paramount control." *Id.* As relief, Plaintiff seeks an award of $12,000 to reimburse him for the rent he has had to pay since 2016. ECF No. 1-1 at p. 8. In addition, Plaintiff requests entry of an order that would direct HUD to provide him a government subsidized "single house" or, alternatively, a voucher that would allow him to "get a house" through a "voucher program."

## II.     Plaintiff's Application to Proceed *In Forma Pauperis*

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a two-step analysis to determine whether to direct service of a complaint where the plaintiff seeks to proceed *in forma pauperis*. *See Roman v. Jeffes*, 904 F.2d 192, 194 n. 1 (3d Cir. 1990). First, the district court evaluates a litigant's financial status and determines whether he or she is eligible to proceed *in forma pauperis* under §1915(a); second, the court assesses the

complaint under §1915(e)(2)[1] to determine whether it is frivolous or otherwise subject to *sua sponte* dismissal. *Id*. (citing *Sinwell v. Shapp*, 536 F.2d 15 (3d Cir.1976)); *see Brown v. Sage, 903 F.3d 300, 304 (3d Cir. 2018)* (describing two-step process for evaluating a petitioner's motion to proceed *in forma pauperis* on appeal); *Schneller v. Abel Home Care, Inc*., 389 F. App'x 90, 92 (3d Cir. 2010); *Rogers v. United States,* 248 F. App'x 402, 402-03 (3d Cir. Sept. 21, 2007). Because the Court finds that Plaintiff lacks sufficient funds to pay the required filing fee, he will be granted leave to proceed *in forma pauperis*.

### III.   Review of the Complaint Under 28 U.S.C. §1915(e)(2)

A. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 1915(e)(2), as amended, "[t]he court shall dismiss the case at any time if the court determines that ... (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A claim is frivolous if it: (1) is based upon an indisputably meritless legal theory and/or, (2) contains factual contentions that are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Whether a complaint fails to state a claim under §1915(e) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). This standard requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Before dismissing a complaint for failure to state a claim upon which relief may be granted pursuant to §1915, a court must grant the plaintiff

---

[1] This provision was formerly codified as 28 U.S.C. §1915(d).

leave to amend his complaint unless the amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).[2]

    B.  <u>Plaintiff's Prior Lawsuit in Case No. 1:18-cv-148</u>

As a preliminary matter, this Court notes that the present lawsuit is substantially similar to one previously filed by Plaintiff against an unidentified HUD "Supervisor" at Civil Action No. 1:18-cv-148.  In that case, like here, Plaintiff asserted claims predicated upon his inability to obtain federally subsidized housing.  The Honorable Cathy Bissoon ultimately dismissed Plaintiff's complaint under 28 U.S.C. §1915(e)(2) for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted.  *See Tate v. Supervisor HUD*, No. CV 18-148, 2018 WL 3068542 (W.D. Pa. June 21, 2018).  Because various aspects of Judge Bissoon's ruling are instructive in this case, the Court recites portions of that decision at length.

In her opinion, Judge Bissoon discussed the Housing Choice Voucher ("HCV") program established under Section 8 of the United States Housing Act of 1937 ("USHA"), as amended, 42 U.S.C. §1437, *et seq.*, which was the program under which Plaintiff sought to obtain benefits. Judge Bissoon observed that:

> Congress authorized the HCV program "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." [42 U.S.C.] §1437f(a). The program is overseen by the United States Department of Housing and Urban Development ("HUD") and administered by local agencies in accordance with federal guidelines. *See Henry v. City of Erie*, 728 F.3d 275, 277 (3d Cir. 2013). "In Erie, the local administering agency is the

---

[2] Because Plaintiff is proceeding pro se, his Complaint must be "liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). The Court must "apply the applicable law, irrespective of whether [Plaintiff] has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotation marks and citation omitted). Notwithstanding this relaxed pleading-standard, however, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

Housing Authority of the City of Erie ("HACE")." *Id.*  As one federal court recently explained:

> The Section 8 program is a tenant-based, housing-choice voucher program (HCV program) authorized under the USHA. With respect to the HCV program, the USHA authorizes the Secretary of HUD "to enter into annual contributions contracts with public housing agencies," who, in turn, "may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with" the HCV Program. 42 U.S.C. § 1437f(b)(1). "The HCV program is generally administered by ... PHAs [public housing authorities]. HUD provides housing assistance funds to the PHA. HUD also provides funds for PHA administration of the program." 24 C.F.R. § 982.1(a)(1). Thus, the HCV program is funded by HUD but administered by local PHAs. 42 U.S.C. § 1437f(b)(1). To participate in the program, families apply directly to the PHA. If the PHA approves the tenancy, PHA then enters into a contract "with the owner [of the rental unit] to make rent subsidy payments on behalf of the family." 24 C.F.R. § 982.1(a)(2). The family pays a portion of its income as rent, and HUD reimburses the PHA for the rental subsidies provided to housing-unit owners through annual contributions contracts. See 42 U.S.C. §§ 1437f(b)(1), 1437f(o)(2)(A), and 24 C.F.R. §§ 982.1(a)(3), 982.151. PHAs develop a "written administrative plan that establishes the local policies for administration of the [HCV] program." 24 C.F.R. § 982.54(a). HUD regulations require the PHAs to "administer the program in conformity with the Fair Housing Act, Title VI of the Civil Rights Act of 1964, section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act." 24 C.F.R. § 982.53(b)(1). HUD is not required to approve the PHA's plan.
>
> PHAs also develop their own policies for admission to the HCV program and administer their own waiting lists. 24 C.F.R. § 982.202. HUD regulations specifically provide "[a]n applicant does not have any right or entitlement to be listed on the PHA waiting list, to any particular position on the waiting list, or to admission to the programs." 24 C.F.R. § 982.202(c). In fact, PHAs are permitted to establish preferences designed to meet the needs of their local areas. 24 C.F.R. § 982.207(a). PHAs also determine when to open or to close their waiting lists. 24 C.F.R. § 982.206.

*Emrit v. Marion Cty. Hous. Auth. (MCHA),* No. 3:16-CV-01854-BR, 2017 WL 743882, at *2-3 (D. Or. Feb. 23, 2017) (alterations in the original).

2018 WL 3068542, at *3-4 (initial alteration added).

Turning to Plaintiff's potential causes of action, Judge Bissoon noted that, "to the extent Plaintiff is attempting to sue HUD or its local supervisor directly under Section 8, he cannot do

5

so because 'Section 8 . . . does not provide for a private right of action except for recovery of rent and utility allowances[.]'" 2018 WL 3068542, at *4 (ellipsis added).  Judge Bissoon then considered whether Plaintiff was attempting to assert a claim under Title VIII of the Fair Housing Act of 1968, 42 U.S.C. §§3601 *et seq.,* which provides a private right of action to redress certain forms of race-based or disability-based discrimination.  She concluded that:  (1) Plaintiff could not assert a claim for damages against HUD or its agents in their official capacities because such claims would be barred by the doctrine of sovereign immunity, and (2) Plaintiff could not pursue claims for injunctive relief against HUD or its agents because HUD is not responsible for actual administration of the HCV program.  2018 WL 3068542, at *4-5. Based on this same reasoning, Judge Bissoon ruled that Plaintiff could not state viable claims against HUD or its agent under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), or Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12132.  Specifically, sovereign immunity would bar monetary claims against HUD or against HUD's agent in his official capacity; also, "HUD does not administer the Section 8 HCV program and, therefore, its agents are not in a position to effectuate Plaintiff's inclusion or exclusion from that program."  2018 WL 3068542, at *5. Furthermore, none of the foregoing statutes allows claims to be asserted against individual defendants, thereby precluding any recovery against the HUD agent individually.  *Id.*

Judge Bissoon then considered whether Plaintiff was attempting to state a *Bivens*-type damages claim[3] for alleged violation of his due process or equal protection rights.  She cited the well-recognized rule that a *Bivens* claim cannot be asserted against a federal agency or against a

---

[3]  *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 389 (1971).

federal agent in his official capacity. *Tate,* 2018 WL 3068542, at *6 (citing authority). To the extent Plaintiff sought damages against the unidentified HUD "Supervisor" in his personal capacity, Judge Bissoon ruled that Plaintiff had failed to plead facts that could plausibly establish the agent's personal involvement in the deprivation of a federal right. *Id.* at *6-8. Plaintiff could not establish a procedural or substantive due process claim because "Plaintiff has no property right, much less a fundamental property right, to obtain publicly subsidized housing under the [Section 8 Housing Choice Voucher] program." *Tate,* 2018 WL 3068542, at *7 (citing 24 C.F.R. §982.202(c) ("An applicant does not have any right or entitlement to be listed on the [Public Housing Authority's] waiting list, to any particular position on the waiting list, or to admission to the programs.")). Even assuming that Plaintiff had a non-fundamental property right to participate in the HCV program in accordance with the program's terms, Judge Bissoon concluded that Plaintiff did not plausibly allege a deprivation of that right by the unidentified HUD supervisor, since the program is administered exclusively by the local public housing authority. *Id.* at 7. In addition, for procedural due process purposes, Plaintiff did not allege any facts establishing what procedural avenues were available to him to redress his grievance, whether he took advantage of those procedures, and, if so, how they were constitutionally inadequate. *Id.* To the extent Plaintiff was alleging a violation of his equal protection rights, Judge Bissoon ruled that the complaint did not allege facts showing that the defendants had treated similarly situated individuals outside of Plaintiff's protected group more favorably. *Id.*

Based upon all of the foregoing defects, Judge Bissoon dismissed the complaint against HUD and the unnamed supervisor. In addition, because the defects could not be remedied, she denied Plaintiff leave to amend his pleading.

C.  Analysis of Plaintiff's Claims in the Present Case

In the instant case, Plaintiff continues to grieve his lack of federally subsidized housing. In this case, as in his prior lawsuit, he alludes to discriminatory treatment and to his status as a disabled individual.  Therefore, construing the complaint liberally, the Court assumes that Plaintiff may be attempting to assert disability discrimination claims under:  (i) Title VIII of the Fair Housing Act of 1968, 42 U.S.C. §§3601 *et seq.;* (ii) Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d; (iii) Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a); (iv) Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12132; and/or (v) a *Bivens* claim for denial of equal protection of the law.  Since the complaint invokes the Due Process Clause of the 14th Amendment, as well as the "Establishment Clause" of the First Amendment, the Court assumes that Plaintiff is also asserting a *Bivens* claims based upon the alleged violations of these constitutional provisions.

To the extent any of the foregoing legal theories are directed against HUD and/or its alleged "associate" -- Ms. Dreswicki, Plaintiffs' Complaint fails to state a viable claim for many of the same reasons that Judge Bissoon outlined in her opinion of June 21, 2018.[4]  First, the doctrine of sovereign immunity precludes Plaintiff from suing HUD directly, and similarly precludes Plaintiff from obtaining damages from a HUD official in her official capacity.  *See F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994); *Tate,* 2018 WL 3068542, at *4 (discussing

---

[4] In addition, Plaintiff's claims against HUD and Ms. Dreswicki may be barred pursuant to the doctrine of res judicata or "claim preclusion," to the extent they concern the same events that Plaintiff grieved in his prior lawsuit. *See Gupta v. Wipro Ltd.*, No. 18-1090, 2018 WL 4896393, at *1 (3d Cir. Oct. 9, 2018) ("The principle of claim preclusion bars not only claims that were brought, but also those that could have been brought, in a previous action.") (discussing the doctrine and citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).

sovereign immunity in the context of a Title VIII FHA claim); *id.* at *5 (discussing sovereign immunity in the context of Title VI, the Rehabilitation Act, and Title II of the ADA); *id.* at *6 (discussing the doctrine in the context of a *Bivens* claim).

Second, individuals are not proper defendants for purposes of claims brought under Title VI, Section 504 of the Rehabilitation Act, or Title II of the ADA. *See Tate,* 2018 WL 3068542, at *5 (citing cases). Accordingly, any claims that Plaintiff is asserting against Ms. Dreswicki under those statutes must be dismissed. *Id.* ("Plaintiff could not obtain relief against the local HUD supervisor under Title VI, the Rehabilitation Act or the ADA because none of these statutes allows claims to be asserted against individual defendants.").

Third, Plaintiff's complaint, like his pleading before Judge Bissoon, fails to allege facts that could plausibly establish a deprivation of his federal constitutional rights. Although the Complaint cites the "Establishment Clause" as a basis for jurisdiction, ECF No. 1-1 at 4, that constitutional provision has no discernible relevance to the facts Plaintiff has pled. *See* U.S. Const. amend. I (stating, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . .").

Plaintiff's invocation of the Due Process Clause fares no better. In order to establish a procedural due process claim, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fifth Amendment's[5] protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law. *See N'Jai*

---

[5] Although the Complaint references the Fourteenth Amendment, it is actually the Fifth Amendment that provides due process guarantees vis-a-vis action by federal officials. *See B&G Constr. Co., Inc. v. Director, Office of Workers' Compensation Prog.*, 662 F.3d 233, 246 n.14 (3d Cir. 2011) (explaining the differences between due process claims under Fifth and Fourteenth Amendments and stating that "the Fifth Amendment applies to actions of the federal government").

*v. U.S. E.P.A.*, No. Civ. A. 13-1212, 2014 WL 2508289, at *18 (W.D. Pa. June 4, 2014). The

plaintiff "must have taken advantage of the processes that were available to him, unless those

processes were unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.

2000). In addition, the property interest in question must be something to which the plaintiff is

legitimately entitled, not just something that the plaintiff needs or desires. *See Bd. of Regents of*

*State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a

person clearly must have more than an abstract need or desire" and "more than a unilateral

expectation of it. He must, instead, have a legitimate claim of entitlement to it.").

In order to state a claim for an alleged substantive due process violation, "'a plaintiff

must prove the particular interest at issue is protected by the substantive due process clause and

the government's deprivation of that protected interest shocks the conscience.'" *Lear v. Zanic*,

524 F. App'x 797, 801–02 (3d Cir. 2013) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir.

2008)). Substantive due process protects only those property interests that are "fundamental" to

the Constitution. *See Nicholas v. Pennsylvania State Univ.*, 227 F. 3d 133, 140 (3d Cir. 2000).

Here, the complaint fails to allege the deprivation of any property interest that could

plausibly be subject to either procedural or substantive due process guarantees. As Judge

Bissoon explained:

> Plaintiff has no property right, much less a fundamental property right, to obtain
> publicly subsidized housing under the HCV program. *See* 24 C.F.R. § 982.202(c)
> ("An applicant does not have any right or entitlement to be listed on the PHA
> waiting list, to any particular position on the waiting list, or to admission to the
> programs.").

2018 WL 3068542, at *7. Moreover, the same pleading deficiencies that Judge Bissoon identified

in Civil Action 18-148 are present in this case, *to wit*:

> Assuming that Plaintiff has a non-fundamental property right to participate in the
> HCV program in accordance with the program's terms, Plaintiff has not plausibly

10

alleged that HUD or its agents actually deprived him of that right because the program is administered exclusively by the local public housing authority. In addition, for procedural due process purposes, Plaintiff has not alleged any facts establishing what procedural avenues were available to him to redress his grievance, whether he took advantage of those procedures, and, if so, how they were constitutionally inadequate.

2018 WL 3068542, at *7.

Plaintiff also has not stated a viable equal protection claim.  To do so, he must allege "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor ... or to prevent the exercise of a fundamental right." *Dique v. New Jersey State Police,* 603 F.3d 181, 184 n. 5 (3d Cir. 2010) (quotations omitted).  Here, Plaintiff has alleged only that individuals with one form of potential disability (those with mental health problems) have obtained a disproportionate share of public housing vis-a-vis individuals like himself who suffer from a different type of disability; however, he does not allege that the individuals associated with Stairways Behavioral Health are otherwise similarly situated to himself and that the differential treatment was based upon an arbitrary or impermissible factor.

Fourth, Plaintiff has failed to allege Ms. Dreswicki's personal involvement in any wrongdoing.  *See Balice v. United States*, 763 F. App'x 154, 157 (3d Cir. 2019) (observing that *Bivens* liability cannot be predicated on a theory of *respondeat superior*, and dismissing claim against the Attorney General for lack of alleged personal involvement in the alleged wrongdoing) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Although the complaint refers to Ms. Dreswicki as a HUD "facilitator" or "associate," it is devoid of any factual content that illuminates her role in the alleged misconduct.  In fact, the only averment concerning Ms. Dreswicki is Plaintiff's statement that she told him that he would "be dead before [he] receive[s]

11

HUD, Hand[6] housing." ECF No. 1-1 at 7. But since the HCV program is administered by the local public housing authority, the complaint fails to establish that Ms. Dreswicki has any authority whatsoever to control Plaintiff's acquisition of federally-subsidized housing. *See Tate*, 2018 WL 3068542, at *8 ("Because the HCV program is administered by the local public housing authority, HUD officials do not have the authority either to mandate or preclude Plaintiff's participation in that program.").[7]

Finally, Plaintiff has not stated any actionable claim against Stairways Behavioral Health. His only averments against Stairways are that its "case manager" has "paramount control" and is somehow "monoplizing [sic] all the HUD housing, voucher program federal alloted [sic] monies. . . ." ECF No. 1-1 at 6-7. Notwithstanding Plaintiff's invocation of the term "monopoly, the Complaint does not state any facts that colorably implicate federal antitrust laws, and its conclusory averments about Stairways's actions are patently insufficient to state any basis for recovery. *See Garrett v. Wexford Health,* 938 F.3d 69, 92 (3d Cir. 2019) (in order for a claim to have "facial plausibility," the "plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; conclusory

---

[6] The Court takes judicial notice of the fact that Housing and Neighborhood Development Service (HANDS) is a private not-for-profit organization operating in nine counties across Northwestern Pennsylvania whose core mission involves the development and management of quality affordable housing, including housing for senior citizens and individuals living with disabilities. *See* https://www.hands-erie.org/about-hands/.

[7] For this same reason, Plaintiff has not stated any cognizable basis for obtaining equitable relief against HUD or Ms. Dreswicki. *See Tate*, 2018 WL 3068542, at *5; *Emrit*, 2017 WL 743882, at *7 (noting that injunctive relief could only be effectuated through the local PHA "because HUD does not have any authority to control or to direct Plaintiff's placement on the Section 8 housing waiting list"); *see also Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996) ("It is axiomatic that for an official to make a dwelling unavailable, that official must first have the authority and power to do so. In other words, the official must be in a position to directly effectuate the alleged discrimination.").

12

allegations of liability are not sufficient) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and alterations omitted).

### IV.    Conclusion

Based upon the foregoing reasons, Plaintiff's motion for leave to proceed *in forma pauperis* will be granted, and the Clerk will be directed to file Plaintiff's complaint.

Nevertheless, after reviewing the complaint in accordance with 28 U.S.C. §1915(e)(2), the Court concludes that Plaintiffs' claims against HUD, and any claims against Ms. Dreswicki in her official capacity as an alleged HUD "associate," are barred under the doctrine of sovereign immunity.  Because this Court lacks subject matter jurisdiction to preside over those claims, they will be dismissed without leave to further amend.

Plaintiff's remaining claims against Ms. Dreswicki and Stairways Behavioral Health also will be dismissed with prejudice for failure to state a cognizable basis for relief.

An appropriate Order follows.

SUSAN PARADISE BAXTER
United States District Judge

Date:   April 30, 2020

13